# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Northern Oil & Gas, Inc., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>EOG Resources, Inc., )<br>)<br>Defendant. ) | **ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS**<br><br>Case No. 1:16-cv-388 |

Before the Court is EOG Resources, Inc.'s ("EOG") Motion to Dismiss for Failure to Add Indispensable Parties, or Alternatively, for an Order Requiring the Plaintiff to Add the Required Parties filed on June 21, 2017. See Docket No. 13. Northern Oil & Gas, Inc. ("Northern Oil") filed a response on July 19, 2017. See Docket No. 20. EOG filed a reply to Northern Oil's response on August 7, 2017. See Docket No. 29. Also before the Court is EOG's Motion to Dismiss Because Claim Preclusion Bars Northern Oil's Claims filed on July 10, 2017. See Docket No. 15. Northern Oil filed a response on July 31, 2017. See Docket No. 28. EOG filed a reply to Northern Oil's response on August 7, 2017. See Docket No. 32. For the reasons set forth below, the Court denies both of EOG's motions to dismiss.

## I. BACKGROUND

Northern Oil is a Minnesota Corporation with its principal office in Minnesota. EOG is a Delaware corporation with its principal office in Texas. See Docket No. 1, p. 1. Northern Oil brought this diversity action against EOG in an attempt to quiet title to a mineral leasehold interest. See Docket No. 1, p. 19. Northern Oil also requests the Court declare EOG acted wrongfully when

it made certain deductions from revenue payments it owed Northern Oil, and Northern Oil asks the Court to bar EOG from engaging in such conduct in the future. See Docket No. 1, p. 22.

### A. THE CONVEYANCES

The conveyances at issue have been the subject of litigation before North Dakota state courts. See Johnson v. Finkle, 837 N.W.2d 123 (N.D. 2013). The deed at the center of the controversy presents a classic *Duhig*[1] scenario—a grant and a reservation, both of which cannot be satisfied because the grantor does not own enough minerals. Axel Anderson owned the surface and minerals in the following property located in Mountrail County, North Dakota:

> Township 157 North, Range 91 West of the 5th Principal Meridian
> Section 7: E1/2SE1/4
> Section 8: NW1/4
>
> Township 158 North, Range 91 West of the 5th Principal Meridian
> Section 23: All
> Section 24: All
> Section 25: W1/2, NE1/4, N1/2SE1/4
> Section 26: N1/2NE1/4, SE1/4NE1/4

See Docket No. 1, p. 2. In 1949, Anderson sold half of the minerals in the above-described property to L.S. Youngblood, except for the S1/2NE1/4 and the N1/2SE1/4 of Section 25, Township 158 North, Range 91 West, which he reserved to himself. See Docket No. 24-1. In 1957, Axel Anderson and his wife Norma Anderson entered into a contract for deed ("the Contract for Deed") to sell the property located in Township 158 North, Range 91 West to Henry Johnson; the Contract for Deed contained a provision stating "[t]he grantor reserves a 1/4 mineral interest . . . ." See Docket No. 24-2. On October 4, 1962, the Andersons conveyed the property described

---

[1] The *Duhig* rule is a rule of construction set forth in *Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878 (Tex. 1940). The rule is applied to deeds containing an over conveyance of minerals. "[I]f a grantor does not own a large enough mineral interest to satisfy both the grant and the reservation, the grant must be satisfied first because the obligation incurred by the grant is superior to the reservation." Finkle, 837 N.W.2d at 136.

2

in the Contract for Deed to Johnson by warranty deed ("the Warranty Deed").  See Docket No. 1, p. 11.  The Warranty Deed contained a provision that stated:  "The grantor reserves a 1/4 mineral interest, including gas and oil, with the right of ingress and egress for the purposeof [sic] mining, exploring or drilling for the same."  See Docket No. 24-3.  Nancy Finkle has succeeded to the Anderson's interests.  See Docket No. 1, p. 11.  Henry Johnson's interest has been divided among his successors ("the Johnsons").  See Docket No. 1, pp. 11-12.  By various oil and gas leases and assignments, Northern Oil acquired 90% of a mineral leasehold interest carved from Finkle's mineral estate; EOG acquired 100% of a mineral leasehold interest carved from the Johnson's mineral estate.  See Docket No. 1, p. 12.

### B.      THE STATE COURT ACTION

The Johnsons brought suit against Finkle in the Northwest Judicial District Court of North Dakota to determine ownership of the 1/2 mineral interest that remained with the Andersons after the conveyance to Youngblood.  Finkle, 837 N.W.2d at 134.  Finkle brought a counterclaim alleging the Warranty Deed contains a mistake and seeking reformation.  Id.  Although both Northern Oil and EOG's leasehold interests were of record, neither was named a party to the lawsuit.  See Docket No. 1, p. 13.  After reviewing various mineral leases and a 1957 delay rental stipulation, the state district court concluded reformation was unwarranted, explaining: "The fact that the Anderson family continued to convey minerals in which they no longer had an ownership interest does not establish a mutual mistake was made when the warranty deed was executed."  See Docket No. 24-14, p. 14.  The state district court applied the *Duhig* rule to the Warranty Deed and quieted title in the minerals to the Johnsons.  See Docket No. 24-14, pp. 7-8 and 15.  Finkle appealed and the North Dakota Supreme Court affirmed.  See Finkle, at 133.  Finkle then petitioned

3

for a rehearing asserting the North Dakota Supreme Court overlooked her argument regarding the effect of the 1957 delay rental stipulation. Id. at 137. The court denied her petition, stating it "considered Finkle's argument about the delay rental stipulation but it did not change the outcome or affect the analysis." Id. at 138.

## C. THE FEDERAL ACTION

EOG drilled a number of oil and gas wells—collectively referred to as the "Lostwood Wells"—on the property in question or on lands pooled with the property in question. See Docket No. 1, pp. 15-16. Prior to the state court judgment, EOG credited Northern Oil with a leasehold interest derived from Finkle's mineral estate, and EOG had been sending Northern Oil production revenue payments. See Docket No. 1, pp. 15-16. On April 20, 2015, EOG sent Northern Oil a letter with the state court judgment enclosed. See Docket No. 35-3. The letter stated EOG would be reversing prior production revenue payments it had made to Northern Oil due to the outcome of the state court action:

> You have been credited with an interest in the subject spacing unit as to the W2 and N2NE of Section 25, Township 158 North, Range 91 West, 5th P.M., originating from an oil and gas lease derived from Nancy Finkle et al, Defendants, as shown on Exhibit "A" attached hereto.
>
> Inasmuch as this lease is invalid, as to Township 158 North, Range 91 West, Section 25: W2 and N2NE, EOG Resources, Inc. will be reversing payments made to you for the interest you were credited with in the Lostwood 13-25H well on these lands. Revised division orders are enclosed.

See Docket No. 35-3, pp. 1-2 (emphasis in original). Further correspondence between Northern Oil and EOG ensued. Northern Oil took the position that the 1957 delay rental stipulation, as well as other documents of record, indicated that the parties to the Warranty Deed intended for Anderson to reserve a 1/4 mineral interest, despite the overconveyance. Northern Oil advised

4

EOG that "the Duhig doctrine can be overcome if a contrary intent can be demonstrated." See Docket No. 1, p. 17. Communication between the parties ultimately ceased and Northern Oil brought this action. See Docket No. 1, p. 18.

Northern Oil claims EOG's reversal of prior production revenue payments was wrongful. Northern Oil also asserts the parties to the Warranty Deed intended for Anderson to reserve 1/4 interest, and thus the *Duhig* rule should not apply. Northern Oil asks the Court to grant a declaratory judgment in its favor. See Docket No. 1, pp. 22-23. EOG has moved to dismiss Northern Oil's complaint on two grounds. EOG first argues Northern Oil has failed to add indispensable parties whose joinder would destroy diversity jurisdiction. See Docket No. 13. EOG's second ground for dismissal is that Northern Oil's claim is res judicata due to the state action, and thus is barred by the doctrine of claim preclusion. See Docket No. 15.

## II.  LEGAL DISCUSSION

The Court will first address EOG's motion to dismiss based on claim preclusion. The Court concludes that because Northern Oil's complaint asserts matters not before the North Dakota courts—namely whether EOG's reversal of revenue payments was wrongful—the doctrine of claim preclusion cannot apply. However, the specific issue of the Warranty Deed's effect was decided by the North Dakota courts. That issue is consequently res judicata, and the Court concludes the doctrine of issue preclusion bars the parties from relitigating the matter in federal court. The Court then turns to EOG's motion to dismiss for failure to add indispensable parties. After application of the analysis required by Rule 19 of the Federal Rules of Civil Procedure, the Court concludes Northern Oil's action is not lacking any required parties at this juncture.

## A.     EOG'S MOTION TO DISMISS BECAUSE CLAIM PRECLUSION BARS NORTHERN OIL'S CLAIMS

EOG asserts Northern Oil's complaint should be dismissed as res judicata due to the state court judgment. Northern Oil argues it cannot be bound by the state court judgment because it acquired its interests before the litigation commenced and it was not a party to the lawsuit. Northern Oil also argues the leasehold interest it is attempting to quiet title to is different than the mineral ownership interest at issue in the state action, and thus its claim is not res judicata.

The doctrine of res judicata "prevents courts from relitigating claims and issues in order to promote the finality of judgments and conserve judicial resources." Macquarie Bank Ltd. v. Knickel, 723 F. Supp. 2d 1161, 1194 (D.N.D. 2010). The term res judicata refers to both claim preclusion and issue preclusion. Taylor v. Sturgell, 553 U.S. 880, 892 (2008). Claim preclusion bars successive litigation of the same claim regardless of whether the claim raises different issues. Id. (quoting New Hampshire v. Maine, 532 U.S. 742 (2001)). Issue preclusion bars relitigation of issues of fact or law resolved in a prior court determination. Id. In federal diversity actions, res judicata determinations must be made according to state law. Rutherford v. Rutherford, 552 F. Supp. 2d 980, 985-986 (D.N.D. 2008) (citing Lane v. Sullivan, 900 F.2d 1247, 1250 (8th Cir. 1990)). Whether res judicata applies is a question of law. Kulczyk v. Tioga Ready Mix Co., 2017 ND 218, ¶ 10, 902 N.W.2d 485.

Judgments generally do not bind those not made party to a lawsuit. Richards v. Jefferson City, Ala., 517 U.S. 793, 798 (1996). However, the United States Supreme Court has "recognized an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." Id. (quoting Hansberry v. Lee, 311 U.S. 32, 41-42 (1940)).

> A person may be legally affected by a judgment, broadly speaking, by reason either of being a party or equivalent participant in the litigation, or from having a legal relationship that is derivative from one who was a party, or in being so situated that his own rights or obligations are conditioned in one way or another by a judgment involving another person.

Restatement (Second) of Judgments 4 Intro. Note (Am. Law Inst. 1982). This concept is commonly referred to as privity. See Nolles v. State Comm. for Reorganization of Sch. Districts, 524 F.3d 892, 902 (8th Cir. 2008). The North Dakota Supreme Court has articulated an "expanded version" of privity:

> Privity exists if one is so identified in interest with another that he or she represents the same legal right. This Court uses an expanded version of privity to include a person not technically a party to a judgment, but who is nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein. The right to participate in an action may be actively exercised by prosecuting the action, employing counsel, controlling the defense, filing of an answer, paying expenses or costs of the action, or doing such other acts that are generally done by parties. Fundamental fairness underlies determinations of res judicata and privity.

Martin v. Marquee Pac., LLC, 2018 ND 28, ¶ 19, 906 N.W.2d 65 (internal quotation and citation omitted); see also Minex Res., Inc. v. Morland, 518 N.W.2d 682, 687 (N.D. 1994); Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380, 384 (N.D. 1992). Although state courts are free to make their own rules regarding res judicata determinations, extreme applications of res judicata may violate federal due process rights. Richards, 517 U.S. at 797-798. The United States Supreme Court has explained that privity requires a non-party be "adequately represented by someone with the same interest who is a party." Id. at 798. "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." Taylor v. Sturgell, 553 U.S. 880, 900 (2008).

7

1. **CLAIM PRECLUSION**

EOG has moved to dismiss Northern Oil's complaint based on the doctrine of claim preclusion. Claim preclusion is "a more sweeping doctrine" than issue preclusion. Hofsommer, 488 N.W.2d 383. It prohibits the relitigation of claims that (1) were or could have been raised in a prior action, (2) between the same parties or their privies, and (3) which were resolved by a final judgment. Id.; see also Snaps Holding Co. v. Leach, 2017 ND 140, ¶ 28, 895 N.W.2d 763. Claim preclusion applies when the claims are based on the same underlying facts, even if the claims rest on differing legal theories. Snaps Holding Co., at ¶ 28.

Northern Oil's complaint requests the Court declare Anderson intended to reserve a one-fourth mineral interest in the Contract Lands and, if necessary, to reform the Warranty Deed to effectuate that intent. See Docket No. 1, p. 22. As discussed below, the issue of how to interpret the warranty deed is clearly rooted in the same set of facts that were before the North Dakota courts. However, Northern Oil also alleges that after the state court judgment was entered, EOG began making deductions from payments it owed Northern Oil in an attempt to recoup production revenue payments EOG had previously made to Northern Oil under the working interests at issue in this case. See Docket No. 1, p. 16. Northern Oil asserts that, regardless of how the Warranty Deed is interpreted, EOG cannot reverse the prior payments. Northern Oil's complaint asks the Court to declare EOG's deductions wrongful and to bar future attempts to reverse the prior revenue payments. See Docket No. 1, p. 22. These facts and arguments were not before the North Dakota courts, and consequently claim preclusion cannot apply.

## 2. ISSUE PRECLUSION

The parties' res judicata arguments focus primarily on claim preclusion and specifically whether Northern Oil shares privity with the state action defendant. EOG has not affirmatively asserted that issue preclusion—a doctrine more limited in scope—applies to this case. However, both doctrines, although different in application, share the same rationale: "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." Taylor, 553 U.S. at 892. The present action concerns property to which multiple parties have an ownership interest. A judgment in this case that is inconsistent with the state court judgment would create title uncertainty. It would result in conflicting claims to mineral ownership and leasehold interests, and it would likely spur additional litigation. Given the uncertainty that inconsistent judgments would create, the Court will consider the doctrine of issue preclusion as it applies to the interpretation of the Warranty Deed. The state district court has already interpreted the Warranty Deed, and that interpretation was affirmed on appeal by the North Dakota Supreme Court. For the reasons set forth below, the Court concludes issue preclusion prohibits the parties from relitigating the effect of the Warranty Deed.

> Issue preclusion applies when the following questions can be answered in the affirmative:
>
> (1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?; (2) Was there a final judgment on the merits?; (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Hofsommer, 448 N.W.2d at 384. The first question is whether the issue decided in the state action is identical to the one presented here. Northern Oil asserts the issues are not the same; it argues it

is attempting to quiet title to a leasehold interest, while the state court action concerned title to the mineral estate. See Docket Nos. 20, p. 5 and 28, p. 4. Although the ownership interests in question may be different, the issue before the Court is the same—i.e., how the Warranty Deed should be interpreted and whether a mistake warrants reformation. In its order granting summary judgment, the state district court explained these were the same issues it was deciding: "The Court notes that what is at issue here is the interpretation and meaning to be given to the October 1962 warranty deed. In the reformation requested by [the Defendants], the Court will further need to look at extrinsic evidence." See Docket No. 24-14, p. 5. The Court consequently finds the issue presented here is identical to the issue decided in the state court action.

The second question—whether there was a final judgment on the merits—can also be answered in the affirmative. After reviewing the extrinsic evidence, the state district court concluded there was no mistake, and it declined to reform the deed. See Docket No. 24-14, pp. 14-15. It applied the *Duhig* rule and entered judgment in favor of the state court plaintiffs. See Docket Nos. 16-2 and 24-14, p. 8. The North Dakota Supreme Court affirmed the judgment on initial appeal and then again on a petition for rehearing. See Finkle, 837 N.W.2d 132; see also Docket No. 16-3. Given these facts, the Court consequently finds the state court action resulted in a final judgment on the merits.

The third question is whether privity exists. Northern Oil argues it is not in privity with the state action defendant because it acquired its interest before the state action commenced. See Docket No. 28, p. 5. Northern Oil cites to case law where successors acquired their interests before the commencement of litigation and consequently were found not in privity with their predecessors. See e.g. Bismarck Pub. Sch. Dist. No. 1 v. Hirsch, 136 N.W.2d 449 (N.D. 1965); Hull v. Rolfsrud, 65 N.W.2d 94 (N.D. 1954)). EOG, on the other hand, argues the subordinate

10

nature of Northern Oil's leasehold interest creates privity with the state action defendant. See Docket No. 16, p. 4. EOG cites to case law where lessees were held to be in privity with lessors. See e.g. Stacy v. Thrasher, 47 U.S. 44 (1848); Scurlock Oil Co. v. Getty Oil Co., 294 So.2d 810 (La. 1974).

Under North Dakota law, "[p]rivity exists if a person is so identified in interest with another that he represents the same legal right." Missouri Breaks, LLC v. Burns, 2010 ND 221, ¶ 13, 791 N.W.2d 33 (quoting Ungar v. North Dakota State Univ, 2006 ND 185, ¶ 12, 721 N.W.2d 16). "Fundamental fairness underlies determinations of privity and res judicata." Kulczyk, 2017 ND 218, ¶ 11, 902 N.W.2d 485. Due process requires that, at a minimum, a non-party be "adequately represented by someone with the same interest who is a party." Richards, 517 U.S. at 798. A party is adequately represented when (1) the interests of the nonparty and its representative are aligned, and (2) the interests of the non-party are protected. Taylor, 553 U.S. at 900.

Northern Oil purports to have a leasehold interest derived from Nancy Finkle's mineral estate. Thus, if Finkle has no legal interest in the minerals—as the North Dakota state courts held—Northern Oil has no leasehold interest. Northern Oil accordingly proffers the same interpretation of the Warranty Deed that Finkle had proffered, and it relies largely on the same evidence and arguments. The Court finds (1) Northern Oil's interests align with Finkle's interests, and (2) the extensive state court litigation served to ensure Northern Oil's interests were protected. The Court consequently finds privity exists between Northern Oil and Finkle, the defendant in the state court action.

Having answered all of the foregoing questions in the affirmative, the Court concludes the interpretation of the Warranty Deed is res judicata under the doctrine of issue preclusion. However, as Northern Oil correctly notes, the state court action only adjudicated the mineral

owners' interests. Other non-parties' potential interests, such as lessees and overriding royalty holders, were not adjudicated. To the extent the parties request this Court to adjudicate these interests, the Court will apply the same interpretation of the Warranty Deed annunciated by the North Dakota state courts.

Although, as explained above, the issue of how to interpret the Warranty Deed is res judicata, Northern Oil's claim presents additional facts and arguments concerning EOG's reversal of production revenue payments that were not before the state courts. For this reason, the Court denies EOG's Motion to Dismiss Because Claim Preclusion Bar's Northern's Claims.

B. **EOG'S MOTION TO DISMISS FOR FAILURE TO ADD INDISPENSABLE PARTIES, OR ALTERNATIVELY FOR AN ORDER REQUIRING THE PLAINTIFF TO ADD THE REQUIRED PARTIES**

EOG asserts Northern Oil's complaint must be dismissed because it has failed to join indispensable parties, the addition of whom would purportedly destroy complete diversity among the litigants. EOG specifically argues potential owners of the mineral estate, co-tenants to Northern Oil's claimed leasehold, and possible overriding royalty interest owners must all be joined.

Rule 19 of the Federal Rules of Civil Procedure authorizes the Court "to exercise its equitable powers to dismiss an action if a party regarded as 'indispensable' cannot be joined." Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 746 (8th Cir. 2001). The Rule sets forth a two-part inquiry. The Court must first determine whether the absent party's presence is "required." Fed. R. Civ. P. 19(a). Joinder is required in three situations: (1) when the Court cannot provide complete relief among the existing parties in the person's absence; (2) when the absent person's ability to protect his interest would be either impaired or impeded by disposing of the action in his

absence; and (3) when disposing of the action without the absent person would subject an existing party to a substantial risk of incurring multiple or inconsistent obligations. Fed. R. Civ. P. 19(a)(1). If joinder is required, the Court must order the absent person be made a party. Fed. R. Civ. P. 19(a)(2). If joinder of a required party is not feasible for some reason—for example, because it creates a jurisdictional defect—the Court must proceed to the second step of the inquiry and determine whether, "in equity and good conscience," the action should proceed or be dismissed. Fed. R. Civ. P. 19(b). The following factors inform this analysis: (1) the extent to which a judgment in the required person's absence might prejudice him or the existing parties; (2) the extent such prejudice could be lessened by protective provisions or otherwise shaping the relief to be granted; (3) the adequacy of a judgment rendered in the required person's absence; and (4) whether the plaintiff would have an adequate remedy if the action was dismissed for nonjoinder. Fed. R. Civ. P. 19(b)(1)-(4).

Dismissal of a case for failure to join a necessary party "is a drastic remedy, which should be employed only sparingly." Trans Energy, Inc. v. EQT Prod. Co., 743 F.3d 895, 901 (4th Cir. 2014) (alteration omitted) (quoting Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 918 (4th Cir. 1999)). Whether a person must be joined can only be determined in the context of the particular litigation before the court. EEE Minerals LLC v. North Dakota, 318 F.R.D. 118, 124 (D.N.D. 2016). The court's inquiry must undertake a practical examination of the circumstances and avoid an inflexible and formulistic approach. Id. at 124-125 (citing Spirit Lake Tribe, 262 F.3d at 746).

To the extent title to the mineral or leasehold estate may be decided, potential owners clearly have an interest in the outcome of the case. However, as explained above, Northern Oil's claim to the leasehold interest presents the same issue that was adjudicated by the North Dakota

13

state courts in the context of a suit to quiet title to the mineral estate. Because the leasehold estate is derivative of the mineral estate, any declaration of ownership this Court might make is likely to be based on a straightforward application of the state court judgment. Cf. Unit Petroleum Co. v. Okla. Water Res. Brd., 898 P.2d 1275, 1277 (Okla. 1995) (oil and gas leasehold rights can be no greater than those held by the lessor). Further, Northern Oil's suit only attempts to quiet title to the leasehold interest claimed by EOG. Joinder of the mineral owners or Northern Oil's potential co-tenants would do little to enhance this Court's ability to fashion relief between EOG and Northern Oil.

However, the interests of those holding an overriding royalty carved from EOG's lease are implicated. But because the question of mineral ownership is res judicata, those overriding royalty owners face little jeopardy. Regardless, EOG is well-situated to defend their interests in this litigation. See Trans Energy, Inc., 743 F.3d at 901-902 (holding party with claim to overriding royalty interest not indispensable and ordering dismissal to keep diversity intact); Trans Energy, Inc. v. EQT Prod. Co., No. 5:13-cv-93, 2016 WL 3190248, at *5 (N.D. W. Va. June 7, 2016) (finding purported lessees would adequately represent party with claim to overriding royalty interests because they "will presumably vigorously argue that they have title to the . . . lease."); Ogalalla Land, Ltd. v. Wexpro Co., 587 F. Supp. 453, 454 (D. Wyo. 1984) (noting "[t]he leading commentators on oil and gas argue that actions should never be dismissed for failure to join an overriding royalty interest owner who would destroy diversity.").

Given the unique characteristics of this case, the Court concludes joinder of the various parties that may have an interest in the mineral or leasehold estate is not required at this juncture. If, going forward, the outcome of this analysis were to change, the Court notes it may raise the

issue of joinder *sua sponte* at any time.  See <u>Republic of the Philippines v. Pimentel</u>, 553 U.S. 851, 861 (2008).

III. **<u>CONCLUSION</u>**

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons set forth above, EOG's Motion to Dismiss for Failure to Add Indispensable Parties, or Alternatively, for an Order Requiring the Plaintiff to Add the Required Parties (Docket No. 13) is **DENIED**.  EOG's Motion to Dismiss Because Claim Preclusion Bars Northern's Claims (Docket No. 15) is also **DENIED**.

**IT IS SO ORDERED**

Dated this 17th day of April, 2018.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court
