**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Northern Oil & Gas Inc., | ) | |
| | ) | **ORDER GRANTING** |
| Plaintiff, | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| vs. | ) | |
| | ) | |
| EOG Resources Inc., | ) | Case No. 1:16-cv-388 |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's motion for summary judgment filed on June 11, 2021.
<u>See</u> Doc. No. 145.  The Plaintiff filed a response in opposition to the motion on January 7, 2022.
<u>See</u> Doc. No. 167.  The Defendant filed a reply brief on February 11, 2022.  <u>See</u> Doc. No. 172.  For
the reasons set forth below, the Defendant's motion is granted.

I.     <u>BACKGROUND</u>

Plaintiff Northern Oil & Gas Inc. ("Northern Oil") is a Minnesota corporation with its
principal office in Minnesota.  Defendant EOG Resources Inc., ("EOG") is a Delaware corporation
with its principal office in Texas.  Northern Oil brought this diversity action against EOG in an
attempt to quiet title to competing mineral leasehold interests in certain property located in Mountrail
County, North Dakota.  Now before the Court is EOG's motion for summary judgment.

A.     <u>THE CONVEYANCES</u>

The conveyances at issue have previously been the subject of litigation before North Dakota
state courts.  <u>See</u> <u>Johnson v. Finkle</u>, 837 N.W.2d 132 (N.D. 2013).  The conveyance at the center of
the controversy presents a classic *Duhig* scenario—a grant and a reservation, both of which cannot
be satisfied because the grantor does not own enough minerals.  The *Duhig* rule is a rule of

1

construction set forth in *Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878 (Tex. 1940), which resolves an overconveyance in favor of the grantee.  The rule, which North Dakota has adopted, provides that  "if a grantor does not own a large enough mineral interest to satisfy both the grant and the reservation, the grant must be satisfied first because the obligation incurred by the grant is superior to the reservation."  Finkle, 837 N.W.2d at 136.

Prior to June 22, 1949, Axel Anderson owned 100% of the surface and minerals in the following property located in Mountrail County, North Dakota:

> Township 157 North, Range 91 West of the 5th Principal Meridian
> Section 7:  E1/2SE1/4
> Section 8:  NW1/4
>
> Township 158 North, Range 91 West of the 5th Principal Meridian
> Section 23:  All
> Section 24:  All
> Section 25:  W1/2, NE1/4, N1/2SE1/4
> Section 26:  N1/2NE1/4, SE1/4NE1/4

See Doc. No. 1, p. 2 ("Anderson Property").

On June 22, 1949, Axel Anderson sold one-half of the minerals in the above-described property to L.S. Youngblood, except for the S1/2NE1/4 and the N1/2SE1/4 of Section 25, Township 158 North, Range 91 West, which he reserved to himself.  See Doc. No. 167-3 ("1949 Mineral Deed").

In 1957, Axel Anderson and his wife Norma Anderson entered into a contract for deed ("1957 Contract for Deed") to sell the their land, including the minerals, located in Township 158 North, Range 91 West to Henry Johnson.  See Doc. No. 167-5.  None of the Anderson Property located in Township 157 was involved in the 1957 Contract for Deed.  The 1957 Contract for Deed contained a provision stating "[t]he grantor reserves a 1/4 mineral interest . . . ."  See Doc. No. 167-

5.

On October 4, 1962, the Andersons conveyed the property described in the 1957 Contract for Deed to Henry Johnson by warranty deed ("1962 Warranty Deed"). See Doc. No. 167-12. The 1962 Warranty Deed contained a reservation that stated: "The grantor reserves a 1/4 mineral interest, including gas and oil, with the right of ingress and egress for the purposeof [sic] mining, exploring or drilling for the same." See Doc. No. 167-12.

Thus, the property located in Mountrail County, North Dakota, which is the subject of this dispute is described as follows:

Township 158 North, Range 91 West of the 5th Principal Meridian
Section 23:  All
Section 24:  All
Section 25:  W1/2, N1/2NE1/4
Section 26:  N1/2NE1/4, SE1/4NE1/4

See Doc. Nos. 1 and 167-12 (Disputed Property). There is no dispute over the S1/2NE1/4 and the N1/2SE1/4 of Section 25 (Undisputed Property). The Undisputed Property was not involved in the 1949 Mineral Deed from Anderson to Youngblood. Thus, Anderson held 100% of the minerals in the Undisputed Property when it was deeded to Henry Johnson via the 1962 Warranty Deed, and the 1/4 mineral reservation in favor of Andersons as to the Undisputed Property was valid.

The Andersons and Henry Johnson are now deceased. Nancy Finkle has succeeded to the Andersons' interests. Henry Johnson's interest has been divided among his successors ("Johnsons"). By various oil and gas leases and assignments, Northern Oil acquired 90% of a mineral leasehold interest carved from Finkle's mineral estate and EOG has acquired 100% of a mineral leasehold interest carved from the Johnsons' mineral estate.

### B.        THE STATE COURT ACTION

In 2011, the Johnsons brought suit against Finkle in the Northwest Judicial District Court of North Dakota to quiet title to the 1/2 mineral interest that remained with Axel Anderson after the conveyance to Youngblood.  Finkle, 837 N.W.2d at 134.  Finkle claimed a 1/4 mineral interest and brought a counterclaim alleging the 1962 Warranty Deed contains a mistake and sought reformation. Id.  Although both Northern Oil and EOG's leasehold interests were recorded, neither was named a party to the lawsuit. On October 31, 2012, after reviewing various mineral leases and a 1957 delay rental stipulation, the state district court concluded reformation was unwarranted, explaining: "The fact that the Anderson family continued to convey minerals in which they no longer had an ownership interest does not establish a mutual mistake was made when the warranty deed was executed."  See Doc. No. 24-14, p. 14.  The state district court applied the *Duhig* rule to the 1962 Warranty Deed and quieted title in the minerals to the Johnsons.  See Doc. No. 24-14, pp. 7-8 and 15.  Finkle appealed.  On August 29, 2013, the North Dakota Supreme Court affirmed, concluding Finkle does not have any interest in the Disputed Property.  See Finkle, 837 N.W.2d at 137.  Finkle then petitioned for a rehearing, asserting the North Dakota Supreme Court overlooked her argument regarding the effect of the 1957 delay rental stipulation.  Id. at 137.  The North Dakota Supreme Court denied her petition, stating it "considered Finkle's argument about the delay rental stipulation but it did not change the outcome or affect the analysis."  Id. at 138.

### C.        THE PRESENT ACTION

EOG drilled a number of oil and gas wells—collectively referred to as the "Lostwood Wells"—on the Disputed Property or on lands pooled with the Disputed Property.  See Doc. No. 1,

pp. 15-16.  Prior to the state court judgment, EOG credited Northern Oil with a leasehold interest derived from Finkle's mineral estate, and EOG had been sending Northern Oil production revenue payments.  See Doc. No. 1, pp. 15-16.  On April 20, 2015, EOG sent Northern Oil a letter with the state court judgment enclosed.  See Doc. No. 35-3.  The letter stated EOG would be reversing prior production revenue payments it had made to Northern Oil due to the outcome of the state court action.  See Doc. No. 35-3, pp. 1-2.

Northern Oil brought this declaratory judgment action in federal court on November 8, 2016. See Doc. No. 1.  The complaint seeks to quiet title as to minerals in the Disputed Property and raises claims for interpretation and reformation of the 1962 warranty Deed.  In 2019, this Court dismissed the action on res judicata grounds based on the decision of the North Dakota Supreme Court in *Finkle*.  Northern Oil appealed.  On July 27, 2020, the Eighth Circuit Court of Appeals reversed the dismissal after concluding there was a lack of privity between Northern Oil and its lessor.  See Doc. No. 105-1.

Now before the Court is EOG's motion for summary judgment.  EOG contends the state court adjudication was correct and this Court should follow it.  Specifically, EOG maintains the 1962 Warranty Deed is unambiguous, the *Duhig* rule applies, and reformation is impermissible.  Northern Oil contends the 1962 Warranty Deed was ambiguous, *Duhig* does not apply, and a mutual mistake of fact merits reformation of the 1962 Warranty Deed.

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party

is entitled to judgment as a matter of law.  Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Id.  The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law.  Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005).  The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial.  Id.; Fed. R. Civ. P. 56(c)(1).  If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate.  Matsushita, 475 U.S. at 587.

## III.   LEGAL DISCUSSION

### A.   INTERPRETATION CLAIM

Northern Oil's action to quiet title raises claims for interpretation and reformation of the 1962

Warranty Deed.  The first question presented by EOG's motion, which pertains to Northern Oil's interpretation claim, is whether the 1962 Warranty Deed is ambiguous.  EOG contends the 1962 Warranty Deed is unambiguous and the *Duhig* rule applies while Northern Oil maintains the 1962 Warranty Deed is ambiguous and the *Duhig* rule does not apply.  The Court agrees with EOG.

In North Dakota, deeds that convey mineral interests are subject to the general rules governing contract interpretation and are to be construed to give effect to the parties' mutual intentions.  Gawryluk v. Poynter, 654 N.W.2d 400, 403 (N.D. 2002).  The intention of the parties is ascertained from the deed alone when the language of the deed is plain and unambiguous.  Finkle, 837 N.W.2d at 135.  "A contract is ambiguous when rational arguments can be made for different interpretations."  Id.  Extrinsic evidence is inadmissible to explain an unambiguous deed but may be considered to clarify an ambiguous deed.  Gawryluk, 654 N.W.2d at 403-04.  Whether a deed is ambiguous is a question of law.  Id. at 404.  A conveyance of land without any exceptions or reservations constitutes conveyance of all of the surface and all of the minerals.  Sibert v. Kubas, 357 N.W.2d 495, 496 (N.D. 1984).  A warranty deed that describes the land conveyed and reserves 1/2 of the minerals in the grantor, conveys and warrants title to the entire surface and 1/2 of the minerals to the grantee.  Id.; Miller v. Kloeckner,  600 N.W.2d 881, 884-85 (N.D. 1999).

Here, the 1962 Warranty Deed grants all the surface estate but "reserves a 1/4 mineral interest, including gas and oil, with the right of ingress and egress for the purpose of mining, exploring, or drilling for the same."  See Doc. No. 167-12.  The North Dakota Supreme Court has determined that this very language in the very same deed is "clear and unambiguous."  Finkle, 837 N.W.2d at 135 (affirming district court determination that the 1962 Warranty Deed was unambiguous).  Northern Oil contends this finding by the North Dakota Supreme Court was dicta.

The Court disagrees.  However, even if it were dicta the statement is highly persuasive in light of *Sibert* and *Miller*.  The issue before the North Dakota Supreme Court in *Finkle* was whether the *Duhig* rule applied or whether the rationale from *Gilbertson v. Charlson*, 301 N.W.2d 144 (N.D. 1981) controlled.  Id. at 135-36.  The North Dakota Supreme Court found the *Duhig* rule applied and *Gilbertson* did not.  Id.  The *Duhig* rule does not apply if there has not been an overconveyance.  So a determination as to what was conveyed by the 1962 Warranty Deed was a necessary predicate to the application of the *Duhig* rule.

The Court agrees with the North Dakota Supreme Court that the 1962 Warranty Deed is clear and unambiguous.  The 1962 Warranty Deed clearly states the grantor was reserving a "1/4 mineral interest."  This is standard language for a mineral reservation which means the grantor is reserving 1/4 of the minerals and conveying 3/4 of the minerals to the grantee, and to hold otherwise would be extraordinary.  See Sibert, 357 N.W.2d at 496.  The Court is unwilling to conclude that the grantee receives something less than that percentage of the minerals not reserved to the grantor since a mineral deed purports to deal with 100% of the minerals.  See Miller, 600 N.W.2d at 884 (citing 1 Patrick H. Martin & Bruce M. Kramer, Williams & Meyers Oil and Gas Law § 311, p. 580.47). Northen Oil's perception of ambiguity is supported only by resort to extrinsic evidence and not by anything in the deed itself.  This is impermissible as an overconveyance does not create an ambiguity.  Goodall v. Monson,  893 N.W.2d 774, 779 (N.D. 2017) (stating "[i]n Gawryluk, we rejected the argument that an overconveyance created a latent ambiguity in a deed").  In the 1962 Warranty Deed the Andersons reserved 1/4 of the minerals and thus conveyed 3/4 despite only owning 1/2, resulting in an overconveyance.

In North Dakota, a grantor's overconveyance of minerals to a third-party grantee is resolved

by application of the *Duhig* rule to construe the deed.  Nichols v. Goughnour, 820 N.W.2d 740, 745 (N.D. 2012).  Under the *Duhig* rule, "if a grantor does not own a large enough mineral interest to satisfy both the grant and the reservation, the grant must be satisfied first because the obligation incurred by the grant is superior to the reservation." Gawryluk, 654 N.W.2d at 405.  *Duhig* is a rule of construction based on estoppel by warranty which precludes the warrantor from challenging the title warranted.  Id.  The rule precludes the admission of extrinsic evidence, places the risk of loss on the grantor, and provides certainty in title examinations.  Id. at 405-06.  "[T]he key question is not what the grantor purported to retain for himself, but what the grantor purported to give to the grantee."  Id. at 405.

In this case the Andersons owned 1/2 of the minerals at the time they executed the 1962 Warranty Deed in which they conveyed 3/4 of the minerals to Henry Johnson while reserving 1/4.  Applying *Duhig*, the grant must be satisfied first.  The result is 1/2 of the minerals were conveyed to Henry Johnson and the reservation in favor of the Andersons was ineffective.

Northen Oil, citing *Webster v. Regan,* 609 N.W.2d 733 (N.D. 2000), contends the *Duhig* rule can be avoided if there is better evidence of intent.  However, *Webster* involved ambiguous stipulated language in a judgment regarding an easement, rather than a mineral reservation, and made no mention whatsoever of *Duhig*.  Id.  *Webster* stands for the proposition that extrinsic evidence may be examined when a grant is ambiguous and intent cannot be determined from the writing alone. Id.  In this case, intent is readily discerned from the deed itself and there is no ambiguity.

Northern Oil also contends that since the North Dakota Supreme Court  did not recognize the *Duhig* rule until 1971, this Court should not apply it to the 1962 Warranty Deed.  However, when the North Dakota Supreme Court recognized the *Duhig* rule in its 1971 decision, *Kadrmas v.*

*Sauvageu*, 188 N.W.2d 753, 755-56 (N.D. 1971), it applied the rule to a 1962 deed. The North Dakota Supreme Court continues to apply the *Duhig* rule to deeds that predate its decision in *Kadrmas*. Gawryluk, 654 N.W.2d at 402-03 (applying the rule to a 1951 mineral deed); Finkle, 837 N.W.2d at 1135-36 (applying the rule to a 1962 warranty deed). Consequently, the Court finds the *Duhig* rule applies and results in the Andersons and their successors having no interest in the Disputed Property.

### B.   **REFORMATION CLAIM**

#### 1.   **STATUTE OF LIMITATIONS**

EOG contends the ten-year limitations period set forth in Section 28-01-15(2) of the North Dakota Century Code applies to Northen Oil's reformation claim and bars it.[1] Northern Oil contends Section 28-01-15(2) does not apply.

Section 28-01-15(2) provides "[a]n action upon a contract contained in any conveyance or mortgage of or instrument affecting the title to real property except a covenant of warranty, an action upon which must be commenced within ten years after the final decision against the title of the covenantor." N.D.C.C. § 28-01-15(2). In *Western Energy Corp. v. Stauffe*, 921 N.W.2d 431 (N.D. 2019), the North Dakota Supreme Court found that Section 28-01-15(2) applied to a quiet title action seeking reformation of a warranty deed and barred the claim. In *Western Energy* the lawsuit was brought as a quiet title action but the relief sought was reformation of a warranty deed executed in 1959. Id. at 434. In finding the action was time-barred, the North Dakota Supreme Court noted "[a]

---

[1]EOG did not raise a statute of limitations argument in relation to Northern Oil's interpretation claim. In North Dakota, the twenty-year limitations period set forth in N.D.C.C. § 28-01-04 generally applies to most types of quiet title actions. See Markgraf v. Welker, 873 N.W.2d 26, 37 (N.D. 2015).

reformation action based upon mutual mistake accrues when the facts which constitute the mistake have been, or in the exercise of reasonable diligence should have been, discovered by the party seeking relief." Id. at 435.  The North Dakota Supreme Court explained that multiple transactions involving the property and minerals in question gave the parties opportunity to discover the discrepancy between the contract for deed, which contained a mineral reservation, and the warranty deed, which did not.  Id. at 434-35.  It was noted a simple title examination should have revealed the discrepancy.  Id. at 435.

This case is similar to *Western Energy* except that in the present case there is no discrepancy between the contract for deed and the warranty deed.  Both cases were quiet title actions in which the plaintiff sought reformation of a warranty deed.  In the present case, a simple title examination should have revealed the Andersons only owned 1/2 the minerals when they conveyed the property to Henry Johnson in 1962.  The 1949 Mineral Deed which conveyed 1/2 the minerals in the Disputed Property from Axel Anderson to Youngblood was recorded in 1949.  See Doc. No. 167-3.  The Court has already determined that the 1962 Warranty Deed is clear and unambiguous.  Axel Anderson should have been able to recall his 1949 mineral sale to Youngblood when he executed the 1957 Contract for Deed and when he executed the 1962 Warranty Deed, and thus know that he did not own enough minerals to satisfy the grant.

As in *Western Energy*, multiple transactions involving the property and minerals in question by the Andersons and/or their successors were made between 1962 and 1988.  See Doc. Nos. 24-4, 24-11, and 146-2.  Northern Oil's argument regarding mutual mistake is based upon an examination of the title and the various transactions involving the Andersons and the Johnsons and their successors.  The transactions cited by Northern Oil include a delay rental stipulation from 1957, two

oil and gas leases to the California Oil Company (one from the Andersons and one from the Johnsons) which were executed and recorded in 1962, and an oil and gas lease ("Hawks lease") from 1949, all of which were duly recorded.  <u>See</u> Doc. Nos. 24-9, 24-10, 24-11, and 167-1.  If these instruments are evidence of mutual mistake then the mistake was known, or should have been known, to the parties and their successors no later than 1962.  Under North Dakota law, all persons have constructive notice of recorded instruments.  N.D.C.C. § 47-19-19; <u>Wehner v. Schroeder</u>, 335 N.W.2d 563, 565 (N.D. 1983).  Constructive notice triggers the duty to investigate and thus starts the limitations period.  <u>Western Energy</u>, 921 N.W.2d at 435.  Generally, successors in interest are charged with the knowledge of their predecessors in interest so Northern Oil is charged with the knowledge of the Andersons.  <u>See</u> <u>Tarnavsky v. McKenzie Cty. Grazing Ass'n</u>, 665 N.W.2d 18, 22 (N.D. 2003) (noting a successor in interest "is not entitled to any greater rights under the statute of limitations than his predecessors in interest").  It cannot be said in this case that the Andersons lacked reason to review the title as occurred in *Wehner v. Schroeder*, 335 N.W.2d 563 (N.D. 1983) (concluding reformation claim was not time barred by Section 28-01-15(2) because the parties had no occasion to review the title after the transaction).

Northern Oil relies on *Sabot v. Fox*, 272 N.W.2d 280 (N.D. 1978); *Ell v. Ell*, 295 N.W.2d 143 (N.D. 1980); *Wehner v. Schroeder*, 335 N.W.2d 563 (N.D. 1983); *Jacob v. Hokanson*, 300 N.W.2d 852, 853 (N.D. 1980); and *Diocese of Bismarck Trust v. Ramada*, 553 N.W.2d 760 (N.D. 1996) for the proposition that Section 28-01-15(2) does not apply.  However, all of these cases predate *Western Energy*.  In 2019, the North Dakota Supreme Court definitively held in *Western Energy* that reformation claims within a quiet title action are controlled by the ten-year limitations period set forth in Section 28-01-15(2).  <u>Western Energy</u>, 921 N.W.2d at 434-35.  Insofar as the

cases cited by Northern Oil conflict with *Western Energy*, the Court is bound to apply the most recent expression of state law by the North Dakota Supreme Court. Keller Farms, Inc. v. McGarity Flying Serv., LLC, 944 F.3d 975, 981 (8th Cir. 2019); Yoder v. Nu-Enamel Corp., 117 F.2d 488, 490 (8th Cir. 1941) ("Where co-ordinate decisions of a state court are conflicting, the most recent pronouncement must be accepted by the federal court as declaring the law of the state."). It is well-established that in predicting state law in a diversity case, "the latest and most authoritative expression of state law applicable to the facts of a case is controlling." Brumley Estate v. Iowa Beef Processors, 715 F.2d 996, 997 (5th Cir. 1983); see also Meredith v. City of Winter Haven, 320 U.S. 228, 234 (1943). Thus, *Western Energy* controls.

Applying *Western Energy*, the Court finds that Section 28-01-15(2) applies to Northern Oil's reformation claim which was commenced in 2016, the ten-year limitations period has long since expired, and the claim for reformation of the 1962 Warranty Deed is time-barred.

## 2. MUTUAL MISTAKE

Having determined that Northern Energy's reformation claim is time-barred, the Court need not consider the merits of the reformation claim based upon mutual mistake. However, even if the claim were not time-barred, it is readily apparent that the claim fails for a lack of clear and convincing evidence that the 1962 Warranty Deed does not reflect the parties' intent.

Northern Oil contends the Andersons and Henry Johnson intended in the 1957 Contract for Deed and the 1962 Warranty Deed that the Andersons would convey a 1/4 mineral interest to Johnson while retaining a 1/4 mineral interest. EOG maintains reformation would be improper.

In North Dakota, there is a statutory basis for reformation set forth in Section 32-04-17 of

the North Dakota Century Code:

> When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

N.D.C.C. § 32-04-17.

> North Dakota law defines a mistake of fact as follows:

> Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:

> 1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

> 2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed.

N.D.C.C. § 9-03-13.

> The North Dakota Supreme Court has set forth the law on reformation as follows:

> Reformation is an equitable remedy used to rewrite a contract to accurately reflect the parties' intended agreement.  This Court has recognized that equity will grant remedial relief in the nature of reformation of a written instrument, resulting from a mutual mistake, when justice and conscience so dictate.  Whether a contract contains a mistake sufficient to support a reformation claim is a question of fact.  The party seeking reformation of a written instrument must establish by clear and convincing evidence that the document does not state the parties' intended agreement.  Courts grant the high remedy of reformation only upon the certainty of error.

Goodall v. Monson, 893 N.W.2d 774, 780 (N.D. 2017) (internal citations and quotations omitted).

"[F]or a mutual mistake to justify reformation of a contract, it must be shown that, at the time of the execution of the agreement both parties intended to say something different from what was said in the instrument."  Melchior v. Lystad, 786 N.W.2d 8, 12 (N.D. 2010) (emphasis in original) (alterations and internal quotations omitted).  Parol evidence, including declarations of the parties

14

and documentary evidence, may be considered in relation to reformation claim if it "tends to show the true intention of the parties." Goodall, 893 N.W.2d at 781.

> Parol evidence of an alleged mutual mistake as a basis for the modification of a written instrument must be clear, satisfactory, specific and convincing, and a court of equity will not grant the high remedy of reformation even upon a mere preponderance of the evidence, but only upon the certainty of error. Mere speculation is not enough to defeat summary judgment, and a scintilla of evidence is not sufficient to support a claim.

Id. at 13–14 (internal citations and quotations omitted). In reformation actions, there is a presumption that the instrument in question "expresses the true agreement and intention of the parties." Ell, 295 N.W.2d at 150. Mutual mistake must be mutual. Melchior, 786 N.W.2d at 13 (noting both parties must have intended to say something different).

In this case, since both the Andersons and Johnson are deceased, discerning their mutual intent is especially difficult. "When considering whether to reform a written instrument, courts should exercise great caution and require a high degree of proof, especially when death has sealed the lips of the original parties or a party." Spitzer v. Bartelson, 773 N.W.2d 798, 805 (N.D. 2009) (internal quotations omitted). There is no evidence Henry Johnson had actual notice of the 1949 Mineral Deed between Axel Anderson and Youngblood, although it may be fairly said that he had constructive notice. Certainly, Axel Anderson had actual and constructive notice of his conveyance to Youngblood. However, it is the Andersons' successors in interest and not Johnson's that seek reformation and thus the burden is on them. Goodall, 893 N.W.2d at 780. Nor is there any evidence Henry Johnson was aware he received anything less than a 3/4 mineral interest as set forth in the 1962 Warranty Deed, or that he understood he was only receiving a 1/4 mineral interest as Northern Oil contends. That the 1957 Contract for deed and the 1962 Warranty Deed contain the identical language regarding the grant and reservation would seem to confirm that the parties meant exactly

what they said.  See Melchior, 786 N.W.2d at 13 (pointing to identical language in contract for deed and warranty deed in finding reformation based upon alleged mutual mistake was unwarranted). Unfortunately, the Andersons did not own enough minerals to satisfy both the grant and the reservation.

While one might speculate that the Andersons intended to grant a 1/4 mineral interest and reserve a 1/4 mineral interest, that is not what the 1962 Warranty Deed clearly and unambiguously states.  And as the state district court pointed out, the 1/4 mineral reservation in the 1962 Warranty Deed was effective as to two parcels of land not at issue in this quiet title action, the S1/2 NE1/4 and N1/2 SE1/4 of Section 25.  See Doc. No. 24-14, p. 9.  The inferences Northern Oil draws from the delay rental payments in the leases to the California Oil Company and the 1957 Delay Rental Stipulation are too slender a reed upon which to base reformation, even when viewed in the most favorable light.  See Doc. No. 24-14, pp. 8-15.  Even a preponderance of evidence is insufficient to reform an instrument.  Melchior, 786 N.W.2d at 13-14.  Reformation requires a "certainty of error" that is not present in this case.  Id. at 14.  Northern Oil's evidence can hardly be described as clear and convincing.  Upon a careful consideration of the entire record, the Court finds as a matter of law that the record does not warrant the "high remedy" of reformation.  Id. at 13-14.

## IV.   CONCLUSION

The Court concludes that the North Dakota Supreme Court's construction of the very same deed in question in this case in *Finkle* was correct, reformation of the deed is not permissible, and the *Duhig* rule applies.  Accordingly, EOG's motion for summary judgment (Doc. No. 145) is **GRANTED**.  The Court further finds and declares as follows:

1.    EOG's lease covers one half of the minerals in the Disputed Property, while
      Northern Oil's lease covers none.

**IT IS SO ORDERED.**

Dated this 20th day of April, 2022.

                              */s/  Daniel L. Hovland*
                              Daniel L. Hovland, District Judge
                              United States District Court